**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAWSON INFRASTRUCTURE GROUP, INC., | ) | |
| Plaintiff. | ) | C.A. NO. 1:26-cv-00057-UNA |
| v. | ) | |
| ENDEAVOR BLOCKCHAIN, LLC, JOSHUA KILGORE, PM SQUARED, LLC, CODY SMITH, and PHIL STANLEY, | ) | |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF SECURITIES LAWS**

Plaintiff Mawson Infrastructure Group, Inc. ("MIGI" or the "Company"), brings this action for breach of securities laws seeking injunctive and related relief against Defendants Endeavor Blockchain, LLC ("Endeavor"), Joshua Kilgore ("Kilgore"), Cody Smith ("Smith"), PM Squared, LLC ("PM Squared"), and Phil Stanley ("Stanley," and, collectively, "Defendants").

**PARTIES**

1. MIGI is a leading provider of, *inter alia*, next-generation digital infrastructure, offering a diverse range of solutions across multiple high-growth sectors, including artificial intelligence and high-performance computing, digital assets and cryptocurrency mining, and blockchain network applications.

2. In 2012, MIGI was formed as a Delaware corporation after merging with its parent company, and began operating under the name Ophthalix Inc. until 2017, and Wize Pharma, Inc. until 2021.

3. The Company completed an uplisting of its common stock to the Nasdaq Stock Market LLC ("Nasdaq") in the fourth quarter of 2021, where its shares were listed for trading under its current name "Mawson Infrastructure Group, Inc.," by means of a reverse merger with Cosmos Capital Limited, a digital infrastructure provider based in Sydney, Australia. The Company's common stock is registered under Section 12(g) of the Securities Exchange Act of 1934 (the "Exchange Act") and continues to be and is currently listed for trading on Nasdaq under the ticker symbol "MIGI."

4. Endeavor is an Arkansas limited liability company whose principal place of business is 5701 Euper Lane, Suite A, Fort Smith, Arkansas, Endeavor is wholly owned and controlled by Kilgore. Endeavor owns at least 1,260,000 shares of MIGI common stock.

5. Kilgore is the sole owner and controller of Endeavor and personally owns at least 8,000 shares of MIGI common stock.

6. Smith is an individual and personally owns at least 75,000 shares of MIGI stock.

7. PM Squared is a Texas limited liability company whose principal place of business is 6050 Southwest Blvd, Suite 150, Benbrook, Texas 76109. PM Squared owns at least 2,297 shares of MIGI common stock.

8. Stanely is an individual and, upon information and belief, is the sole owner of PM Squared.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.A. §§78aa, 78m(d)(3), and 28 U.S.C.A. §§ 1331, 1367. The claims asserted herein arise under Section 10(b) and 13(d) of the Exchange Act, 15 U.S.C.A. §§ 78j(b) and 78m(d), and the rules and

regulations promulgated thereunder, including SEC Rules 10b-5 (17 C.F.R. § 240.10b-5) and 13d-1 (17 C.F.R. § 240.13d-1).

10. This Court has personal jurisdiction over Defendants pursuant to 15 U.S.C.A § 78aa.

11. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual controversy exists regarding Defendants' violation of, and failure to comply with, federal securities law, including Sections 10(b) and 13(d) of the Exchange Act and SEC Rules 10b-5 and 13d-1.

## BACKGROUND FACTS

### A. Investor Reporting Obligations.

12. As a publicly traded "reporting company," MIGI and its stockholders are subject to the reporting requirements and other provisions of the Securities and Exchange Act of 1934, codified at 15 U.S.C.A. § 78a, et seq (the "Exchange Act") and the rules ad regulations promulgated thereunder, including the Rules of the Securities and Exchange Commission, codified at 17 C.F.R. § 240.12, et seq (the "SEC Rules").

13. Pursuant to 15 U.S.C. § 78m, and 17 C.F.R. § 240.13d, within ten days of becoming, directly or indirectly, the beneficial owner of more than five percent of a class of a reporting company's stock registered under the Exchange Act, generally, its common stock, a person must file a Schedule 13D with the Securities and Exchange Commission (the "SEC") which provides critical information regarding, among other things, the identity of acquiring party, the number of shares acquired, and the purposes of the acquisition. 15 U.S.C. § 78m(d), 17 C.F.R. § 240.13d-1.

14. Section 240.13d-101 of the Code of Federal Regulations provides clear instructions on what information is required and how to properly complete and file a Schedule 13D. See, Ex. A.

15. Among other things, Schedule 13D requires disclosure of:

a. the Party acquiring the stock;

b. the number of shares beneficially owned by acquiring person;

c. the percentage of class the person's interest represents;

d. the purpose of the transaction, and any plans or proposals the person has which relate to or would result in:

1) The acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer;

2) An extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries;

3) A sale or transfer of a material amount of assets of the issuer or any of its subsidiaries;

4) Any change in the present board of directors or management of the issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;

5) Any material change in the present capitalization or dividend policy of the issuer;

6) Any other material change in the issuer's business or corporate structure, including but not limited to, if the issuer is a registered closed-end investment company, any plans or proposals to make any changes in its investment policy for which a vote is required by section 13 of the Investment Company Act of 1940;

7) Changes in the issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the issuer by any person;

8) Causing a class of securities of the issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;

9) A class of equity securities of the issuer becoming eligible for termination of registration pursuant to section 12(g)(4) of the Act; or

10) Any action similar to any of those enumerated above.

e. the acquiring party's interest in the reporting company's stock, including the number of shares they own or have the power to vote, and

f. a description of "any transactions in the class of securities reported on that were effected during the past sixty days or since the most recent filing of Schedule 13D (§240.13d–101), whichever is less, by the persons" listed. This description must "include, but not necessarily be limited to: (1) [t]he identity of the person covered by Item 5(c) who effected the transaction; (2) the date of transaction; (3) the amount of securities involved; (4) the price per share or unit; and (5) where and how the transaction was effected."

Ex. A, at Item 5.

16. Disclosure of this information is "mandatory" and failing to provide the information may result in civil or criminal actions. *Id.*

17. If there is any change to the information provided, the person filing the disclosure must file an amendment. *Id.*

**B. The Company has been, and continues to, sell stock into the market.**

18. Last year, the Company began selling newly issued shares through an at-the-market offering (the "ATM Offering") which allows the Company to sell up to a certain dollar amount of shares into the market on an ongoing basis, subject to there being sufficient liquidity and a satisfactory price (in the Company's discretion). The first ATM program commenced on October

21, 2025 and ran through December 10, 2025. The second ATM program commenced on December 11, 2025 and is still ongoing.

19. In determining whether to sell into the market under the ATM, the Company also relies upon the assumption that all required disclosures under the Exchange Act by third-parties have been timely and accurately made.

### C. The Defendants launched a secret campaign to take control of the Company.

20. At some time prior to December 22, 2025, while the ATM Offering was underway, the Defendants began a campaign to surreptitiously take over the Company. Their unlawful scheme, which was concealed from the Company, its stockholders, and the open market, depended on secretly acquiring a significant percentage of the Company's stock without timely filing a Schedule 13D and ultimately filing a Schedule 13D and amendments thereto (collectively the "Schedule 13D Filings") which misstated material facts and omitted to state material facts. Following the filing of the false and misleading Schedule 13D Filings the Defendants then began pressuring the Company's board to accept a tender offer proposal which would have given the Defendants ownership in excess of 70% of the Company's common stock and majority control of its board.

#### 1. The Defendants conceal their purchase of Mawson stock through a false and misleading Schedule 13D.

21. On December 22, 2025, Defendants filed a Schedule 13D with the SEC (the "Initial Schedule"). See Ex. B. The Initial Schedule was not only filed late but was intentionally misleading and violative of the Rules. First, the Initial Schedule disclosed, for the first time, that the Defendants had, at some undisclosed time, acquired 958,279 shares, or 5.55%, of MIGI's common stock, broken down as follows:

| Name | Number of Shares | Percentage of MIGI Stock |
|---|---|---|
| Endeavor | 915,000 | 5.3% |
| Kilgore | 8,000 | 0.05% |
| Smith | 32,982 | 0.19% |
| PM Squared | 2,297 | 0.01% |

*See* Ex. B.

22. The Initial Schedule did not explain when the Defendants acquired that interest nor did it disclose any transactions the Defendants were involved in with Company stock in the preceding 60 days.

23. As the Company learned several weeks later, the Initial Schedule also misrepresented the purpose for Defendants' acquisition of MIGI stock, by falsely claiming that the Defendants simply wanted "to partner with the management team at Mawson to clean up their balance sheet and provide strategic partnerships to drive profitability." Ex. B, Item 4.

24. Finally, the Initial Schedule failed to disclose whether the Defendants had any plans or proposals which would relate to or result in any of the events identified in 17 C.F.R. § 240.13d-101, Item 4.

25. The Initial Schedule was certified by Kilgore (individually and on behalf of Endeavor), Smith (individually), and PM Squared (by Phil Stanley). Ex. B, pp 7-8.

**2. The Defendants' second false and materially misleading filing.**

26. Knowing that the Initial Schedule was false, misleading, and incomplete, on January 6, 2026, Defendants, through counsel at Dorsey & Whitney LLP, filed the first amended Schedule 13D (the "First Amended Schedule"). Ex. C.

27. As reflected in the First Amended Schedule, in the weeks since the Initial Schedule was filed the Defendants had acquired significantly more stock. Specifically, the First Amended Schedule stated that the Defendants collectively owned 1,043,279 shares, or 31.6%, of MIGI common stock, broken out as follows:

| Name | Number of Shares | Percentage of MIGI Stock |
|---|---|---|
| Endeavor | 990,000 | 30.0% |
| Kilgore | 8,000 | 0.02% |
| Smith | 42,982 | 1.3% |
| PM Squared | 2,297 | 0.01% |

Ex. C.

28. Like the Initial Schedule, the First Amended Schedule did not disclose when the Defendants first acquired Company stock. Moreover, the First Amended Schedule presented a different purpose for the Defendants' acquisition of Company stock—the stock was an "attractive investment" and they "intend[ed] to engage with the Issuer's management and Board of Directors regarding opportunities for value creation." Ex. C, Item 4. As the Company soon learned, that disclosure was deliberately incomplete and misleading.

29. Finally, the First Amended Schedule expressly stated that the Defendants did not "ha[ve] any present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) - (j) of Item 4 of Schedule 13D." Ex. C, Item 4.

**c) Defendants Attempt to Take Control of the Company.**

30. On January 8, 2026, two days after filing the First Amended Schedule, the Defendants sent the Company's board a written proposal for a Tender Offer and Series A Preferred Equity Financing (the "Tender Offer"). *See* Ex. D.

31. According to the Tender Offer, the Defendants intended to "launch an all-cash tender offer to purchase up to 500,000 shares of common stock from existing shareholders." Ex. D, § 2. If Defendants' offer was fully subscribed, they would own 70.2% of the Company's common stock, prior to conversion of any preferred. *Id.* at p. 5.

32. The Tender Offer also contemplated the issuance of $21 million Series A Preferred PIPE. *Id.* Each preferred share would have 4 votes and vote together with the common stock. *Id.* Including the Series A Preferred, this would give the Defendants 79% of the Company's fully diluted common equity. *Id.*

33. The Tender Offer revealed that Defendants would also take over control of the Company's board—appointing three of the five directors—and controlling the selection of a new CEO which would occupy the fourth board seat. *Id.*

**d) Defendants continue to lie to the Company, its shareholders and the market.**

34. Despite knowing that they sent the Tender Offer four days earlier, on January 12, 2026, the Defendants, through counsel, filed a second amended Schedule 13D (the "Second Amended Schedule"). *See* Ex. E. According to the Second Amended Schedule, the Defendants owned 1,345,297 shares, representing 40.7% of the Company's common stock broken out as follows:

| Name | Number of Shares | Percentage of MIGI Stock |
|---|---|---|
| Endeavor | 1,260,000 | 38.1% |
| Kilgore | 8,000 | 0.2% |
| Smith | 75,000 | 2.3% |
| PM Squared | 2,297 | 0.1% |

Ex. E.

35. The Second Amended Schedule elevated the Defendants' pattern of making false and misleading statements to the Company and the general public to a new level. Specifically, the Second Amended Schedule contained an undeniable lie—that the Defendants had "no present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D." Ex. E, Item 4.

36. In addition to the Second Amended Schedule, on January 12, 2026, the Defendants also belatedly filed a SEC Form 3, Initial Statement of Beneficial Ownership of Securities, and SEC Form 4, Statement of Changes in Beneficial Ownership (Exs. F, G) which provide different numbers further obfuscating Defendants' actions.

37. By intentionally concealing their plans the Defendants were able to deceive the public markets, the Company, and its shareholders, thereby allowing the Defendants to purchase Company stock on the open market without paying a control premium.

38. Furthermore, the Defendants' actions manipulated the public price of the Company's common stock by concealing from the market exactly when and how many shares the Defendants bought and at what price.

39. This type of fraudulent and deceptive conduct is exactly what Section 13(d) of the Exchange Act was enacted to prevent.

40. Had the Company, its stockholders, and the market known about the Defendants' purchases and plans to take over the Company, they could have taken appropriate action. However, by concealing material information the Defendants ensured that they would reap significant benefits at the expense of the Company, its shareholders, and the open market.

41. The Company raised the false disclosures with the Defendants in a letter to Defendants' counsel emailed on January 14, 2026. While the Defendants recognized the need for

additional disclosures, they rejected the Company's efforts to address the violations of the securities laws, and refused to commit to an immediate correcting disclosure.

42. Given Defendants' surreptitious and belatedly-stated goal of obtaining control of MIGI, their secret acquisition of more than one million shares of MIGI stock, and their obstinance in discussions with the Company regarding their conduct, it is reasonable to believe that, absent an injunction, the Defendants will continue to acquire MIGI stock in violation of Sections 10(b) and 13(d) of the Exchange Act, and SEC Rule 10b-5, and 13d-1.

**SCIENTER**

43. Each of the Defendants knew, or were reckless in not knowing, that failing to make complete and accurate disclosures of their purchases and intentions was a violation of the Exchange Act, including Section 13(d), and the rules and regulations promulgated thereunder, as well as SEC Rule 13d-1.

44. Each of the Defendants knew, or were reckless in not knowing, that, until the delayed receipt of the Tender Offer, the Company was not aware of the details of the Defendants' stock purchases or their actual purposes for purchasing the stock.

45. Each of the Defendants knew, or were reckless in not knowing, that by concealing their purchases and intention, and filing false, misleading, and incomplete Schedule 13Ds, the Defendants were preventing the market from having access to all material information concerning their goals and their trading in the Company's stock.

46. The Defendants cannot claim ignorance as to their obligations to file a Schedule 13D disclosure.

47. Kilgore, a sophisticated investor, is both an individual stockholder and exercised complete control over Endeavor.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD-ON-THE-MARKET DOCTRINE.**

48. At all relevant times the market for MIGI stock was an efficient market for, among others, the following reasons:

a. MIGI's stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient market;

b. At all relevant times, MIGI stock was actively traded, demonstrating a very strong presumption of an efficient market; and

c. As a regulated issuer, the Company filed with the SEC certain period public reports, and all persons who beneficially own more than five percent of MIGI's common stock are required to disclose the nature and extent of their beneficial ownership and all subsequent purchases and sales of MIGI stock.

49. As a result of the foregoing, the market for MIGI's common stock promptly digested current information that was legally mandated to be disclosed from all available sources and reflected such information in the Company's common stock price.

**COUNT I**
**(Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 – the Initial Schedule)**

50. The Company repeats and realleges each and every allegation stated in paragraphs 1 through 49 as if set forth herein.

51. In violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

52. As discussed above, the Initial Schedule lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' purpose for acquiring the Company's stock, and failed to disclose the existence of

"any plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."

53. The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

54. Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and SEC Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in MIGI stock and from continuing with the Tender Offer; and (iii) an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' MIGI shares in accordance with the vote of the majority of the remaining outstanding MIGI shares.

55. The Company has no adequate remedy at law.

**<u>COUNT II</u>**
**(Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 - the First Amended Schedule )**

56. The Company repeats and realleges each and every allegation stated in paragraphs 1 through 55 as if set forth herein.

57. In violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

58. As discussed above, the First Amended Schedule lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' purpose for acquiring the Company's stock, and failed to disclose the existence

of "any plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."

59. The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

60. Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and SEC Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in MIGI stock and from continuing with the Tender Offer; and (iii) an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' MIGI shares in accordance with the vote of the majority of the remaining outstanding MIGI shares.

61. The Company has no adequate remedy at law.

**COUNT III**
**(Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 – the Second Amended Schedule)**

62. The Company repeats and realleges each and every allegation stated in paragraphs 1 through 61 as if set forth herein.

63. In violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

64. As discussed above, the Second Amended Schedule lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' purpose for acquiring the Company's stock, and failed to disclose the existence

of "any plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."

65. The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

66. Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and SEC Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in MIGI stock and from continuing with the Tender Offer; and (iii) an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' MIGI shares in accordance with the vote of the majority of the remaining outstanding MIGI shares.

67. The Company has no adequate remedy at law.

**COUNT IV**
**(Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5)**

68. The Company repeats and realleges each and every allegation stated in paragraphs 1 through 67 as if set forth herein.

69. Defendants individually and/or in concert violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) intentionally made untrue statements of material fact or omitted to state material facts necessary to not mislead MIGI, it stockholders, and the market as to its trading activities and intention to seek to take over the Company; and/or (iii) engaged in the acts, practices, and course of conduct alleged herein that operated as a fraud or deceit upon MIGI.

70. Defendants had actual knowledge of their misrepresentations and omission of material facts relating to their trades and intention to take over the Company or acted with reckless disregard for the truth in that they failed to disclose such material facts, even though such facts were readily available and known to them. Defendants' material misrepresentations and omissions were made knowingly or recklessly for the purpose of furthering their fraudulent scheme.

71. The Company was in the position of seller with respect to selling shares in the ATM. As such, the Company has standing under Section 10(b) and SEC Rule 10b-5 to recover monetary damages as a result of Defendants' conduct.

72. As a result of Defendants' material misrepresentations and omissions, the Company has been damaged in an amount to be determined at trial.

73. The Company is entitled to (i) a declaration that Defendants violated Section 10(b) and SEC Rule 10b-5; (ii) monetary damages in an amount to be determined at trial; and (iii) injunctive relief as discussed herein.

## REQUEST FOR RELIEF

WHEREFORE, the Company respectfully requests judgment against Defendants as follows:

(a) Declaring that the Defendants violated Section 13(d) of the Exchange Act and SEC Rule 13d-1 in connection with the Initial Schedule.

(b) Declaring that the Defendants violated Section 13(d) of the Exchange Act and SEC Rule 13d-1 in connection with the First Amended Schedule.

(c) Declaring that the Defendants violated Section 13(d) of the Exchange Act and SEC Rule 13d-1 in connection with the Second Amended Schedule.

(d) Declaring that the Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5.

(e) Enjoining the Defendants from trading in MIGI stock and from continuing with the Tender Offer.

(f) Directing the Defendants to provide the Company's board with a proxy to vote the Defendants' MIGI shares in accordance with the vote of the majority of the remaining outstanding MIGI shares.

(g) Directing the Defendants to divest themselves of all shares of Company stock.

(h) Directing the Defendants to file corrected Schedule 13Ds providing the complete and accurate information required by the securities laws.

(i) Awarding such other relief as the Court may deem just and proper.

Dated: January 20, 2026

LEWIS BRISBOIS
BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (Bar No. 2624)
Keith A. Walter (Bar No. 4157)
Sean M. Brennecke (Bar No. 4686)
Aimee M. Czachorowski (Bar No. 4670)
Rae Ra (Bar No. 7253)
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Tel: (302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Keith.Walter@LewisBrisbois.com
Sean.Brennecke@LewisBrisbois.com
Aimee.Czachorowski@LewisBrisbois.com
Rae.Ra@LewisBrisbois.com

*Attorneys for Plaintiff Mawson Infrastructure Group, Inc.*