**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| MAWSON INFRASTRUCTURE GROUP, INC., | ) ) ) ) | |
| Plaintiff, | ) | C.A. NO. <u>26-CV-00057-JLH</u> |
| | ) | |
| v. | ) ) | |
| ENDEAVOR BLOCKCHAIN, LLC, JOSHUA KILGORE, PM SQUARED, LLC, CODY SMITH, and PHIL STANLEY, | ) ) ) ) ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT FOR VIOLATION OF SECURITIES LAWS**

Plaintiff Mawson Infrastructure Group, Inc. ("Mawson," or the "Company"), hereby files

its Amended Complaint for Violation of Securities Law seeking injunctive and related relief

against Defendants Endeavor Blockchain, LLC ("Endeavor"), Joshua Kilgore ("Kilgore"), Cody

Smith ("Smith"), PM Squared, LLC ("PM Squared"), and Phil Stanley ("Stanley," and,

collectively, "Defendants"), and alleges as follows.

**PARTIES**

1.      The Company is a leading provider of, *inter alia*, next-generation digital

infrastructure, offering a diverse range of solutions across multiple high-growth sectors, including

artificial intelligence and high-performance computing, digital assets and cryptocurrency mining,

and blockchain network applications.

2.      The Company completed an uplisting of its common stock to the Nasdaq Stock

Market LLC ("Nasdaq") in the fourth quarter of 2021, where its shares were listed for trading

under its current name "Mawson Infrastructure Group, Inc.," by means of a reverse merger with

170309108.2                                          1

Cosmos Capital Limited, a digital infrastructure provider based in Sydney, Australia. The Company's common stock is registered under Section 12(g) of the Securities Exchange Act of 1934 (the "Exchange Act") and continues to be and is currently listed for trading on Nasdaq under the ticker symbol "MIGI."

3. Endeavor is an Arkansas limited liability company whose principal place of business is 5701 Euper Lane, Suite A, Fort Smith, Arkansas, Endeavor is wholly owned and controlled by Kilgore. Endeavor purports to own at least 1,400,000 shares of the Company's common stock.

4. Kilgore is the sole owner and controller of Endeavor and purports to personally own at least 8,000 shares of the Company's common stock. Kilgore has, more than once, been involved in cases where illegal Medicaid kickback schemes were alleged. By way of example:

   a) *Kilgore v. Mullenax*, 2016 Ark. App. 143, at *9-10 (Ct. App. Ark. Mar. 2, 2016) (In litigation ensuing after Kilgore reported his former business partner for illegal kickback scheme to Insurance Commissioner in order to gain advantage in arbitration over Kilgore's violation of his non-disparagement agreement with former business partner, the Court of Appeals affirmed arbitration award, specifically violation of the non-disparagement provision, noting "that Kilgore's primary motivation [in reporting Plaintiff to the Insurance Commissioner for potential fraud] was not protecting the interest of the public but to gain an advantage in the arbitration that [the opposing party] had filed against him, thinking that to discredit or disparage [Plaintiff] might give him an advantage and result in the dismissal of the arbitration.";

170309108.2                                        2

b) *STAP, Inc. v. Sutterfield*, 2020 Ark. App. 18 (Jan. 15, 2020) (affirming denial of motion to enforce arbitration clause in nursing home wrongful death claim against Kilgore, Kilgore Consulting Group, Inc. and entities owned by Kilgore);

c) *United States v. Napper*, 2025 WL 2585680 (M.D. Tenn Sep. 5, 2025) (Qui Tam case brought by the States of Tennessee and Louisiana and the United States against Kilgore and entities owned by Kilgore for illegal Medicaid kickback scheme for nursing home dental services).

5. Smith is an individual and purports to personally own at least 75,000 shares of the Company's stock.

6. PM Squared is a Texas limited liability company whose principal place of business is 6050 Southwest Blvd, Suite 150, Benbrook, Texas 76109. PM Squared purports to own at least 2,297 shares of the Company's common stock.

7. Stanley is an individual and, upon information and belief, is the sole owner of PM Squared.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.A. §§78aa, 78m(d)(3), and 28 U.S.C.A. §§ 1331, 1367. The claims asserted herein arise under Section 10(b), 13(d), and 14(a) of the Exchange Act, 15 U.S.C.A. §§ 78j(b), 78n, and 78m(d), and the rules and regulations promulgated thereunder, including rules 10b-5. 13d-1, and 14a-9 of the Rules of the Securities and Exchange Commission (the "Rules"), codified at 17 C.F.R. §§ 240.10b-5, 240.13d-1, and 240.14a-9, respectively.

9. This Court has personal jurisdiction over Defendants pursuant to 15 U.S.C.A § 78aa.

10.     Declaratory relief is appropriate pursuant to 28 U.S.C.A. § 2201 because an actual controversy exists regarding Defendants' violation of, and failure to comply with, federal securities law, including Sections 10(b), 13(d) and 14(a) of the Exchange Act and Rules 10b-5, 13d-1, and 14a-9.

## BACKGROUND FACTS

### A. Investor Reporting Obligations.

11.     As a publicly traded "reporting company," the Company and its stockholders are subject to the reporting requirements and other provisions of the Exchange Act, codified at 15 U.S.C.A. § 78a, *et seq*, and the rules and regulations promulgated thereunder, including the Rules, codified at 17 C.F.R. § 240.01, *et seq*.

### i. Exchange Act § 78m and Rule 13d-1

12.     Pursuant to 15 U.S.C.A. § 78m, and 17 C.F.R. § 240.13d, within ten days of becoming, directly or indirectly, the beneficial owner of more than five percent of a class of a reporting company's stock registered under the Exchange Act, generally, its common stock, a person must file a Schedule 13D with the Securities and Exchange Commission (the "SEC") which provides critical information regarding, among other things, the identity of acquiring party, the number of shares acquired, and the purposes of the acquisition.

13.     Section 240.13d-101 of the Code of Federal Regulations provides clear instructions on what information is required and how to properly complete and file a Schedule 13D.

14.     Among other things, Schedule 13D requires disclosure of:

a.   the Party acquiring the stock;

b.   the number of shares beneficially owned by acquiring person;

c.   the percentage of class the person's interest represents;

d.  the purpose of the transaction, and any plans or proposals the person has which

    relate to or would result in:

    1)  The acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer;

    2)  An extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries;

    3)  A sale or transfer of a material amount of assets of the issuer or any of its subsidiaries;

    4)  Any change in the present board of directors or management of the issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;

    5)  Any material change in the present capitalization or dividend policy of the issuer;

    6)  Any other material change in the issuer's business or corporate structure, including but not limited to, if the issuer is a registered closed-end investment company, any plans or proposals to make any changes in its investment policy for which a vote is required by section 13 of the Investment Company Act of 1940;

    7)  Changes in the issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the issuer by any person;

    8)  Causing a class of securities of the issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;

    9)  A class of equity securities of the issuer becoming eligible for termination of registration pursuant to section 12(g)(4) of the Act; or

    10) Any action similar to any of those enumerated above.

e.  the acquiring party's interest in the reporting company's stock, including the

    number of shares they own or have the power to vote, and

f.  a description of "any transactions in the class of securities reported on that were

    effected during the past sixty days or since the most recent filing of Schedule

170309108.2

5

13D (§240.13d–101), whichever is less, by the persons" listed. This description must "include, but not necessarily be limited to: (1) [t]he identity of the person covered by Item 5(c) who effected the transaction; (2) the date of transaction; (3) the amount of securities involved; (4) the price per share or unit; and (5) where and how the transaction was effected."

17 C.F.R. § 240.13d-101, at Item 5.

15.    Disclosure of this information is "mandatory" and failing to provide the information may result in civil or criminal actions. *Id.*

16.    If there is any change to the information provided, the person filing the disclosure must file an amendment. *Id.*

17.    "Whenever two or more persons are required to file a [Schedule 13D] … with respect to the same securities, only one statement must be filed. Rule 13d-1(k)(1). When a group files a single Schedule 13D, each member of the group "is responsible for the timely filing of such statement and any amendments thereto, and for the completeness and accuracy of the information concerning such person contained therein" and for other statements if the member "knows or has reason to believe that such information is inaccurate." Rule 13d-1(k)(1)(ii). The joint Schedule 13D must also attach, "as an exhibit, their agreement in writing that [the Schedule 13D] is filed on behalf of each of them." Rule 13d-1(k)(1)(iii).

### ii.    Exchange Act § 78n and Rule 14a

18.    Stockholders of a registered company wishing to solicit proxies from other stockholders must comply with Rule 14a.

19. A solicitation must ordinarily be accompanied by a detailed proxy statement. Rule 14a-3. However, in certain circumstances, a stockholder may issue solicitation without a proxy statement provided that certain requirements are met. Rule 14a-12.

20. Rule 14a-9 requires that all solicitations, regardless of when or how they are made, contain complete and accurate information. Rule 14a-9 states, in relevant part,

> No solicitation … [shall contain]… any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

Rule 14a-9.

### iii. Exchange Act § 78j and Rule 10b-5

21. Section 78j and Rule 10b-5 ensure that investors do not manipulate the market.

22. Rule 10b-5 provides, in its entirety,

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

### B. The Company has been, and continues to, sell stock into the market.

23. Beginning on October 21, 2025, and continuing through today, the Company has been selling newly issued shares through an at-the-market offering (the "ATM Offering"). This process allows a company to sell up to a certain dollar amount of shares into the market on an

ongoing basis, subject to there being sufficient liquidity and a satisfactory price (in the Company's discretion).

24.    In determining whether to sell into the market under the ATM Offering, the Company relies upon the assumption that all required disclosures under the Exchange Act by third-parties have been timely and accurately made.

### C. The Defendants launch a secret campaign to take control of the Company.

25.    At some time prior to December 22, 2025, while the ATM Offering was underway, the Defendants began a campaign to surreptitiously take over the Company. Their unlawful scheme, which was concealed from the Company, its stockholders, and the open market, depended on secretly acquiring a significant percentage of the Company's stock without timely filing a Schedule 13D, as well as filing five Schedule 13Ds that misstated and omitted material facts (collectively the "Schedule 13D Disclosures"). After filing the false and misleading Schedule 13D Disclosures the Defendants then began pressuring the Company's board to accept a tender offer proposal which would have given the Defendants ownership of approximately 70% of the Company's outstanding common stock and majority control of its board.

### i.    The Defendants first false and misleading Schedule 13D.

26.    On December 22, 2025, Defendants filed a Schedule 13D with the SEC (the "Initial Schedule"). *See* Ex. A. The Initial Schedule was not only filed late but was intentionally misleading and violative of the Exchange Act and the Rules. First, the Initial Schedule disclosed, for the first time, that the Defendants had, at some undisclosed time, acquired 958,279 shares, or 5.55%, of the Company's common stock, broken down as follows:

| Name | Number of Shares | Percentage of Company Stock |
|---|---|---|
| Endeavor | 915,000 | 5.3% |
| Kilgore | 8,000 | 0.05% |

| Smith | 32,982 | 0.19% |
| PM Squared | 2,297 | 0.01% |

*See* Ex. A.

27.    The Initial Schedule did not explain when the Defendants acquired that interest nor did it disclose any transactions the Defendants were involved in with Company stock in the preceding 60 days.

28.    The Initial Schedule did not attach the exhibit required by Rule 13d-1(k)(1)(iii), nor was it accompanied by a Form 3 (Initial Statement of Beneficial Ownership of Securities) or Form 4 (Statement of Changes in Beneficial Ownership).

29.    As the Company learned several weeks later, the Initial Schedule also misrepresented the purpose for Defendants' acquisition of the Company's stock, whereby Defendants falsely claimed they simply wanted "to partner with the management team at Mawson to clean up their balance sheet and provide strategic partnerships to drive profitability." Ex. A, Item 4.

30.    Finally, the Initial Schedule failed to disclose whether the Defendants had any plans or proposals which would relate to or result in any of the events identified in 17 C.F.R. § 240.13d-101, Item 4.

### ii.    The Defendants' second false and materially misleading filing.

31.    Knowing that the Initial Schedule was false, misleading, and incomplete, on January 6, 2026, Defendants, through counsel at Dorsey & Whitney LLP, filed the first amended Schedule 13D (the "First Amendment"). Ex. B.

32.    According to the First Amendment, Defendants had acquired an additional 85,000 shares in the weeks following the Initial Schedule. As of December 26, 2025, the Defendants

purported to collectively own 1,043,279 shares, or 31.6%, of the Company's common stock, broken out as follows:

| Name | Number of Shares | Percentage of Company's Stock |
| --- | --- | --- |
| Endeavor | 990,000 | 30.0% |
| Kilgore | 8,000 | 0.02% |
| Smith | 42,982 | 1.3% |
| PM Squared | 2,297 | 0.01% |

Ex. B.

33.     Like the Initial Schedule, the First Amendment did not disclose when the Defendants first acquired Company stock.  Moreover, the First Amendment presented a different purpose for the Defendants' acquisition of Company stock—that the stock was an "attractive investment" and they "intend[ed] to engage with the Issuer's management and Board of Directors regarding opportunities for value creation."  Ex. B, Item 4.  As the Company soon learned, that disclosure was deliberately incomplete and misleading.

34.     Finally, the First Amendment expressly stated that the Defendants did not "ha[ve] any present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) - (j) of Item 4 of Schedule 13D."  Ex. B, Item 4.

### iii.     The Defendants attempt to take control of the Company.

35.     On January 8, 2026, two days after filing the First Amendment, the Defendants sent the Company's board a written proposal for a Draft Tender Offer and Series A Preferred Equity Financing (the "Tender Offer").  *See* Ex. C.

36.     According to the Tender Offer, the Defendants intended to "launch an all-cash tender offer to purchase up to 500,000 shares of common stock from existing shareholders."  Ex. C, § 2.  If Defendants' offer was fully subscribed, they would own approximately 70.2% of the Company's common stock, prior to conversion of any preferred stock.  *Id.* at 5.

37.    The Tender Offer also contemplated the issuance of $21 million Series A Preferred PIPE.  *Id.*  Each preferred share would have 4 votes and vote together with the common stock.  *Id.*  When combined with the new common shares, the Series A Preferred would give the Defendants ownership of approximately 79% of the Company's fully diluted common equity.  *Id.*

38.    The Tender Offer revealed that Defendants would also take over control of the Company's board—appointing three of the five directors—and controlling the selection of a new CEO who would occupy the fourth board seat.  *Id.*

### iv.    The Defendants continue to lie to the Company, its shareholders, and the market.

39.    Despite sending the Tender Offer four days earlier, on January 12, 2026, the Defendants, through counsel, filed a second amended Schedule 13D (the "Second Amendment"). *See* Ex. D.  According to the Second Amendment, as of December 26, 2025, the Defendants owned 1,345,297 shares, representing 40.7% of the Company's common stock broken out as follows:

| Name | Number of Shares | Percentage of Company Stock |
|---|---|---|
| Endeavor | 1,260,000 | 38.1% |
| Kilgore | 8,000 | 0.2% |
| Smith | 75,000 | 2.3% |
| PM Squared | 2,297 | 0.1% |

Ex. D.

40.    The Second Amendment elevated the Defendants' pattern of making false and misleading statements to the Company and the market to a new level.  Specifically, the Second Amendment contained an undeniable lie—that the Defendants had "no present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."  Ex. D, Item 4.

41.    In addition to the Second Amendment, on January 12, 2026, the Defendants also belatedly filed a SEC Form 3 (Initial Statement of Beneficial Ownership of Securities), and SEC

Form 4 (Statement of Changes in Beneficial Ownership), Exs. E, F, G, which provide different numbers further obfuscating Defendants' ownership and actions.

42.     The Company raised the false disclosures with the Defendants in a letter to Defendants' counsel emailed on January 14, 2026.  While the Defendants seemingly recognized the need for additional disclosures, they rejected the Company's efforts to address the violations of the securities laws and refused to commit to an immediate correcting disclosure.

**v.     The Defendants file a third false and misleading Schedule 13D.**

43.     On January 21, 2026, Defendants filed their third amended Schedule 13D (the "Third Amendment"). Ex. H.

44.     The Third Amendment revealed that Defendants had acquired even more shares, collectively owning 1,485,297 shares, representing 44.9% of the Company's common stock broken out as follows:

| Name | Number of Shares | Percentage of Company Stock |
|---|---|---|
| Endeavor | 1,400,000 | 42.4% |
| Kilgore | 8,000 | 0.2% |
| Smith | 75,000 | 2.3% |
| PM Squared | 2,297 | 0.1% |

Ex. H, Item 5(a).

45.     The Third Amendment was the first time the Defendants disclosed the existence of the Tender Offer (which should have been disclosed no later than the Second Amendment).

46.     However, the Third Amendment is still incomplete and misleading because, among other things, Defendants stated that "no tender offer has been … planned…" and there were no "agreements, arrangements or understandings … regarding any such transactions."  Ex. H at Item

170309108.2                                         12

4. The fact that Defendants submitted the Tender Offer makes these representations false and/or misleading.

47.     The Third Amendment also fails to disclose the fact that Defendants repeatedly violated Exchange Act sections 10(b) and 13(d), and Rule 13D by filing multiple false and misleading Schedule 13Ds.

48.     Each of the Schedule 13D Disclosures were certified by Kilgore (individually and on behalf of Endeavor), Smith (individually), and PM Squared (by Phil Stanley).  Exs. A, B, D, H, L.

**D.  Defendants' file two false and misleading Schedule 14A Disclosures.**

49.     Having finally disclosed their long-held intention to take over the Company, on January 22, 2026, Defendants filed two Schedule 14A disclosures.  *See* Exs. I, and J respectively.

50.     The first Schedule 14A disclosure was a "Letter to the Stockholders of Mawson Infrastructure Group, Inc" (the "Solicitation") which purportedly advised the Company's stockholders that Defendants would be issuing a preliminary proxy statement "to solicit votes for, among other things, the election of one or more director nominees at the 2026 annual meeting of stockholders." Ex. I at 1.

51.     In the Solicitation, Defendants claim to have "repeatedly sought to work with" the Company, yet, they do not disclose that they have refused to meaningfully engage and were virtually nonresponsive to the Company and its counsel's communications on a variety of issues, including establishing a schedule for this litigation (despite a court order to do so).  The Solicitation also fails to disclose that Defendants repeatedly violated Rule 13d (and how), concealed their efforts to take over the Company, and lied to the Company and its shareholders.

170309108.2                                    13

52.    Furthermore, the Defendants changed their purpose once again, claiming that they "want to help Mawson avoid a destabilizing outcome and create value for all its shareholders" and that they were "not seeking special control rights, favorable economics, or any side arrangements." Ex. I at p. 3. These statements are contrary to the Tender Offer, which would have given them control of the Company.

53.    The second Schedule 14A disclosure was a press release issued in response to the Company's initial complaint in this matter (the "Press Release," together with the Solicitation, the "Schedule 14A Disclosures"). Ex. J. Like the Solicitation, the Press Release failed to disclose the fact that Defendants repeatedly violated the Exchange Act and the Rules.

### E.  Defendants continue to acquire Company stock.

54.    After being made aware of the numerous violations and being served with Plaintiff's Complaint for Violation of Securities Laws and its Motion for Expedited Injunctive Relief, the Defendants continued to string the Company along with promises of cooperation.

55.    Plaintiffs' conduct demonstrates that those promises were simply more delay tactics. By way of example, after accepting service of the Complaint, and being made aware of the Court's order that the parties engage in a meet and confer regarding an expedited case schedule, the Defendants took more than five days to respond to Plaintiff's proposed case schedule.

56.    Incredibly, while they were delaying all discussions, Defendants continued to trade in the Company stock, including Endeavor's purchased another 60,000 shares on January 26, 2026. While Defendants filed a fourth amended Schedule 13D (the "Fourth Amendment") (Ex. L), it suffers from the same failings as the Third Amendment.

57.    In addition to the false and misleading Schedule 13D Disclosures and the 14A Disclosures, Kilgore has made several posts on social media confirming that the Defendants'

purpose is not to assist management but rather to take over the Company. A compilation of some of those posts is attached as Exhibit K.

### F. Defendants have manipulated the market and harmed the Company and its stockholders.

58. By intentionally concealing their plans, the Defendants were able to deceive the public markets, the Company, and its shareholders, thereby allowing the Defendants to purchase Company stock on the open market without paying a control premium.

59. Furthermore, the Defendants' actions manipulated the public price of the Company's common stock by concealing from the market exactly when and how many shares the Defendants bought and at what price.

60. This type of fraudulent and deceptive conduct is exactly what Rules 10b, 13d and 14a were enacted to prevent.

61. Had the Company, its stockholders, and the market known about the Defendants' purchases and plans to take over the Company, they could have taken appropriate action. However, by concealing material information the Defendants ensured that they would reap significant benefits at the expense of the Company, its shareholders, and the open market.

62. Prefacing the 14A Disclosures with the qualifier that they "intend[] to file a preliminary proxy" does not change the fact that Defendants have once again concealed material facts from the market in violation of the Exchange Act and the Rules. Defendants cannot knowingly violate the law to further their concealed agenda then seek to "correct" those statements later.

63. Given Defendants' surreptitious and belatedly-stated goal of obtaining control of the Company, their secret acquisition of more than one million shares of the Company's stock, and their obstinance in engaging in discussions with the Company regarding their conduct, it is

reasonable to believe that, absent an injunction, the Defendants will continue to acquire shares of the Company's stock in violation of Sections 10(b), 13(d), and 14(a) of the Exchange Act, and Rule 10b-5, 13d-1, and 14a-9.

## SCIENTER

64.     Each of the Defendants knew, or were reckless in not knowing, that failing to make complete and accurate disclosures of their purchases and intentions was a violation of the Exchange Act, including Sections 13(d) and 14(a), and the rules and regulations promulgated thereunder, including Rules 13d-1 and 14a-9.

65.      Each of the Defendants knew, or were reckless in not knowing, that, until the delayed receipt of the Tender Offer, the Company was not aware of the details of the Defendants' stock purchases or their actual purposes for purchasing the stock.

66.     Each of the Defendants knew, or were reckless in not knowing, that by concealing their purchases and intention, and filing false, misleading, and incomplete Schedule 13Ds and Schedule 14As, the Defendants were preventing the market from having access to all material information concerning their goals and their trading in the Company's stock.

67.     The Defendants cannot claim ignorance as to their obligations to file a complete and accurate Schedule 13D and Schedule 14A, and the need to update those filings as appropriate.

68.     Kilgore, a sophisticated investor, is both an individual stockholder and exercised complete control over Endeavor.

69.     Stanley is a sophisticated investor and exercised complete control over PM Squared.

170309108.2                                              16

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE.

70.     At all relevant times the market for the Company's stock was an efficient market for, among others, the following reasons:

      a.  The Company's stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient market;

      b.  At all relevant times, the Company's stock was actively traded, demonstrating a very strong presumption of an efficient market; and

      c.  As a regulated issuer, the Company filed with the SEC certain period public reports, and all persons who beneficially own more than five percent of the Company's common stock are required to disclose the nature and extent of their beneficial ownership and all subsequent purchases and sales of the Company's stock.

71.     As a result of the foregoing, the market for the Company's common stock promptly digested current information that was legally mandated to be disclosed from all available sources and reflected such information in the Company's common stock price.

## COUNT I
### (Violation of Section 13(d) of the Exchange Act and Rule 13d-1 – the Initial Schedule)

72.     The Company repeats and realleges each and every allegation stated in paragraphs 1 through 71 as if set forth herein.

73.     As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder, including the Rules.

170309108.2                                    17

74.    In violation of Section 13(d) of the Exchange Act and Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

75.    As discussed above, the Initial Schedule lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' purpose for acquiring the Company's stock, and failed to disclose the existence of "any plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."

76.    The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

77.    Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance; (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares.

78.    The Company has no adequate remedy at law.

170309108.2                                    18

## COUNT II
### (Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 - the First Amendment)

79.     The Company repeats and realleges each and every allegation stated in paragraphs 1 through 78 as if set forth herein.

80.     As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder.

81.     In violation of Section 13(d) of the Exchange Act and Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

82.     As discussed above, the First Amendment lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' purpose for acquiring the Company's stock, and failed to disclose the existence of "any plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."

83.     The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

84.      Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of

Defendants' noncompliance; and (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares.

85.    The Company has no adequate remedy at law.

## COUNT III
**(Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 – the Second Amendment)**

86.    The Company repeats and realleges each and every allegation stated in paragraphs 1 through 85 as if set forth herein.

87.    As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder.

88.    In violation of Section 13(d) of the Exchange Act and Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

89.    As discussed above, the Second Amendment lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' purpose for acquiring the Company's stock, and failed to disclose the existence of "any plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) – (j) of Item 4 of Schedule 13D."

90.    The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

91.     Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance; and (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares.

92.     The Company has no adequate remedy at law.

## COUNT IV
### (Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 – the Third Amendment)

93.     The Company repeats and realleges each and every allegation stated in paragraphs 1 through 92 as if set forth herein.

94.     As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder.

95.     As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder, including the Rules.  In violation of Section 13(d) of the Exchange Act and Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

96.     As discussed above, the Third Amendment lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the

Defendants' intentions, failed to disclose Defendants' repeated violations of the Exchange Act and the Rules, and omitted information regarding Defendants' efforts to engage with the Company.

97.     The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

98.     Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance; and (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares.

99.     The Company has no adequate remedy at law.

## COUNT V
### (Violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1 – the Fourth Amendment)

100.     The Company repeats and realleges each and every allegation stated in paragraphs 1 through 99 as if set forth herein.

101.     As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder.

170309108.2                                          22

102.    As stockholders in a publicly traded reporting company Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder, including the Rules.  In violation of Section 13(d) of the Exchange Act and Rule 13d-1, the Defendants failed to file a complete and accurate Schedule 13D disclosure.

103.    As discussed above, the Fourth Amendment lacked the required detail regarding the Defendants' trading activity, contained false and/or misleading statements regarding the Defendants' intentions, failed to disclose Defendants' repeated violations of the Exchange Act and the Rules, and omitted information regarding Defendants' efforts to engage with the Company.

104.    The Defendants' failure to file a complete and accurate Schedule 13D deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

105.    Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance; and (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares.

106.    The Company has no adequate remedy at law.

## COUNT VI
### (Violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9)

107.   The Company repeats and realleges each and every allegation stated in paragraphs 1 through 106 as if set forth herein.

108.   As stockholders in a publicly traded reporting company, Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder.

109.   Rule 14a-9 requires that all solicitations, regardless of when or how they are made, contain complete and accurate information.  Rule 14a-9 states, in relevant part,

> No solicitation … [shall contain]… any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

110.   In violation of Section 14(a) of the Exchange Act and Rule 14a-9, the Defendants failed to file a complete and accurate Schedule 14A disclosure.

111.   As discussed above, the Schedule 14A disclosures were false and/or misleading, because, among other things, (i) the Defendants fail to disclose that they refused to meaningfully engage and were virtually nonresponsive to the Company's communications which renders Defendants' statement that they "repeatedly sought to work with" false and misleading; (ii)  the Solicitation misrepresents Defendants' true purpose by stating their intention was to "help Mawson avoid a destabilizing outcome and create value for all its shareholders" and that they were "not seeking special control rights, favorable economics, or any side arrangements; and (iii) the Solicitation fails to disclose the fact that Defendants had repeatedly violated the Rules, and lied to the Company and its stockholders.

170309108.2

24

112. The Defendants' failure to file a complete and accurate Schedule 14As deprives the Company, its shareholders, and the market of the full and accurate information to which they are entitled—and both the Company and its shareholders will be irreparably harmed by the Defendants' continued failure to file a complete and accurate disclosure.

113. Accordingly, the Company is entitled to (i) a declaration that Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance; and (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares.

114. The Company has no adequate remedy at law.

**COUNT VII**
**(Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5)**

115. The Company repeats and realleges each and every allegation stated in paragraphs 1 through 114 as if set forth herein.

116. As stockholders in a publicly traded reporting company, Defendants are required to comply with the Exchange Act and the rules and regulations promulgated thereunder.

117. Defendants individually and/or in concert violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) intentionally made untrue statements of material fact or omitted to state material facts necessary

to not mislead the Company, it stockholders, and the market as to its trading activities and intention to seek to take over the Company; and/or (iii) engaged in the acts, practices, and course of conduct alleged herein that operated as a fraud or deceit upon the Company.

118.   Defendants had actual knowledge of their misrepresentations and omission of material facts relating to their trades and intention to take over the Company or acted with reckless disregard for the truth in that they failed to disclose such material facts, even though such facts were readily available and known to them.  Defendants' material misrepresentations and omissions were made knowingly or recklessly for the purpose of furthering their fraudulent scheme.

119.   The Company was in the position of seller with respect to selling shares in the ATM Offering.  As such, the Company has standing under Section 10(b) and Rule 10b-5 to recover declaratory, injunctive, and monetary damages as a result of Defendants' conduct.

120.   As a result of Defendants' material misrepresentations and omissions, the Company has been damaged, equitably and/or monetarily in an amount to be determined at trial.

121.   The Company is entitled to (i) a declaration that Defendants violated Section 10(b) and Rule 10b-5; (ii) an injunction prohibiting the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction until further order of the Court; and (iii) an order requiring Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance; (iv) to the extent Defendants are not directed to divest their shares or offer rescission, an order directing the Defendants to provide the Company's board with a proxy to vote the Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares; and (v) monetary damages in an amount to be determined at trial.

**REQUEST FOR RELIEF**

WHEREFORE, the Company respectfully requests judgment against Defendants as follows:

(a) Declaring that the Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1 in connection with the Initial Schedule.

(b) Declaring that the Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1 in connection with the First Amendment.

(c) Declaring that the Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1 in connection with the Second Amendment.

(d) Declaring that the Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1 in connection with the Third Amendment.

(e) Declaring that the Defendants violated Section 13(d) of the Exchange Act and Rule 13d-1 in connection with the Fourth Amendment.

(f) Declaring that the Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 in connection with the Schedule 14A disclosures.

(g) Declaring that the Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5.

(h) Enjoining the Defendants from trading in the Company's stock and from continuing with the Tender Offer or other change of control transaction.

(i) Directing the Defendants to divest their shares or alternatively directing Defendants to offer rescission to all Mawson shareholders that sole in the open market and through the ATM Offering during the period of Defendants' noncompliance;

(j) To the extent Defendants are not directed to divest their shares or offer rescission, directing the Defendants to provide the Company's board with a proxy to vote the

170309108.2                                           27

Defendants' shares in accordance with the vote of the majority of the remaining outstanding shares;

(k) Directing the Defendants to file a corrected Schedule 13D and 14A providing the complete and accurate information required by the securities laws.

(l) Awarding monetary damages.

(m) Awarding such other relief as the Court may deem just and proper.


Dated: January 29, 2026

LEWIS BRISBOIS
BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (Bar No. 2624)
Keith A. Walter (Bar No. 4157)
Sean M. Brennecke (Bar No. 4686)
Aimee M. Czachorowski (Bar No. 4670)
Rae Ra (Bar No. 7253)
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Tel: (302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Keith.Walter@LewisBrisbois.com
Sean.Brennecke@LewisBrisbois.com
Aimee.Czachorowski@LewisBrisbois.com
Rae.Ra@LewisBrisbois.com

*Attorneys for Plaintiff Mawson Infrastructure Group, Inc.*

170309108.2